IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BARBARA MCGARVEY,** | : | **Civil No. 1:16-CV-02011** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **TE CONNECTIVITY, LTD.,** | : | |
| **T/D/B/A TYCO ELECTRONICS,** | : | |
| **LTD.,** | : | |
| | : | |
| **Defendant.** | : | **Judge Sylvia H. Rambo** |

# M E M O R A N D U M

In this action, Plaintiff has brought claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951–963, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634 against her former employer for discrimination, hostile work environment, and retaliation. Presently before the court is Defendant's motion for summary judgment as to all claims. (Doc. 21.) For the reasons stated herein, Defendant's motion will be granted in its entirety.

# I.    Background

In considering the instant motion, the court relied on the uncontested facts, or where the facts were disputed, viewed the facts and deduced all reasonable inferences therefrom in the light most favorable to the nonmoving party.

## A.    Facts

Plaintiff Barbara McGarvey ("Plaintiff") is a fifty-three year old female who was employed by Defendant TE Connectivity ("Defendant") and its predecessor entity between 1986 and 2015. (McGarvey Dep., p. 34-35 of 230; Dep. Ex. 1.) Defendant is a large engineering and telecommunications company that develops technology for industrial applications, transportation, medicine, energy, data communications, and home uses. (Showers Aff. at ¶¶ 1-2.) During the time period relevant to her complaint, Plaintiff was employed as a Senior Industrial Engineer. Her job functions included determining the cost of materials, engineering time, and equipment purchases for projects and preparing cost models and break-even analyses for various projects. (McGarvey Dep., p. 36-37 of 230.) Plaintiff was promoted to Senior Industrial Engineer from her previous position as a Senior Supplier Quality Engineer in 2010. (McGarvey Dep., p. 38-40 of 230; Dep. Ex. 1.) From the time of her promotion until Fall 2014, Plaintiff's direct supervisor was Andy Balthazer ("Balthazer"). (McGarvey Dep., p. 40 of 230.) In Fall 2014, James Showers ("Showers") became Plaintiff's direct supervisor until her

employment with Defendant was terminated in 2015. (*Id*. at 41, 53-54 of 230.) Tabatha Sultzaberger ("Sultzaberger") is currently employed by Defendant as a technician and worked with Defendant during the time period relevant to her complaint. (Sultzaberger Dep., p. 11 of 34.) Steven "Chris" Farmer ("Farmer") was hired by Defendant as an Industrial Engineer in March 2014. (Farmer Dep., p. 9 of 16.) Farmer was 23 years old at the time he was hired. (*Id*. at 10 of 16.) Both Sultzaberger and Defendant were responsible for training Farmer. (Sultzaberger Dep., p.14 of 34.)

In October 2010, Plaintiff suffered a fall during a hunting trip, resulting in broken ribs and spinal vertebrae that required surgeries to repair. (McGarvey Dep., p. 11 of 230.) Plaintiff requested and received six months of medical leave from Defendant while she healed from her injuries. During her leave, her position was "held open" and no temporary employee was hired to fulfil her job functions. (*Id*. at 43 of 230.) Plaintiff returned to work in or around April 2011. (*Id*.) Beginning in 2013, Plaintiff requested and was approved by Balthazer to work from home one day per week to accommodate complications related to her spinal injuries. (*Id*. at 107 of 230.) When Showers became Plaintiff's direct supervisor in 2014, Plaintiff asked Showers if she could continue to work from home one day per week. (*Id*. at 109 of 230.) Showers did not immediately respond. (*Id.*) Instead, Showers consulted with Defendant's Human Resources Manager, Natalie Stevens, and met

jointly with Stevens and Plaintiff. (*Id*. at 110 of 230.) Showers and Stevens informed Plaintiff that she would be required to submit a doctor's note demonstrating the need for the accommodation and that the accommodation would be for a three-month trial basis. (*Id*. at 111 of 230.) Plaintiff, however, was continually allowed to work from home one day per week from 2013 until the end of her employment with Defendant, and Defendant did not, at any point, deny her request to work from home. (*Id*. at 111-117 of 230.) In early 2015, Plaintiff requested that Defendant provide her with a "standing desk" that could be raised and lowered, to alleviate discomfort associated with her spinal injury. (*Id*. at 121-122 of 230.) Showers did not immediately respond to Plaintiff's request, but again met with Stevens, who informed Plaintiff that she would need to provide a doctor's note demonstrating the need for such a desk. (*Id*. at 122-124 of 230.) Plaintiff provided the note and received the standing desk, although she believed that other employees had received similar desks without being required to provide a doctor's note. (*Id*. at 128-131 of 230.)

In or around March 2014, Defendant hired Chris Farmer as an industrial engineer assigned to Plaintiff's "module" and under the supervision of Showers. (Farmer Dep., p. 9 of 16.) Plaintiff, a more senior engineer, was tasked with training Farmer. (McGarvey Dep., pp. 90-91 of 230.) During the training, Plaintiff stated that Farmer began rubbing his genitals on the outside of his pants.

(*Id*. at 91-92 of 230.)  Plaintiff was taken aback, but told Farmer to stop.  (*Id*. at 92-93 of 230.)  Farmer continued to rub his genitals intermittently throughout the training.  (*Id*.)  Plaintiff expressed her disgust with Farmer to Sultzaberger, who stated that Farmer had twice done the same during her training session.  (Sultzaberger Dep., pp. 16-17 of 34.)  Both Plaintiff and Sultzaberger complained directly to Showers, who stated that he would address the issue with Human Resources.  (*Id*. at 17-18 of 34; McGarvey Dep., pp. 96-99 of 230.)  Plaintiff testified that Farmer avoided interacting with her whenever possible after the incident.  (McGarvey Dep., pp. 98-99.)  Farmer, however, testified that he was unaware of any complaints filed against him by either Plaintiff or Sultzaberger.  (Farmer Dep., pp. 11-12 of 16.)  Showers testified that Sultzaberger alone complained about Farmer's conduct.  (Showers Dep., p. 23 of 34.)

In July 2015, Defendant began a "Reduction-in-Force" ("RIF"), mandating that 100 employees within Plaintiff's division be laid off.  (Showers Dep., p. 11 of 34; Stevens Dep., p. 21 of 23.)  Plaintiff was one of the individuals whose employment was terminated as a result of the RIF.  Although Balthaser had input in the decision to terminate Plaintiff's employment, Showers made the final decision to do so.  (Balthaser Dep., p. 15 of 21; Showers Dep., pp. 15-16 of 34.)  Showers and Balthaser both testified that the predominant reason for Plaintiff's selection in the RIF was her poor work performance and a secondary reason was

that Plaintiff has stated her intention to seek employment elsewhere. (Balthaser Dep., pp. 15-16 of 21; Showers Dep., pp. 11-12 of 34.) Showers stated that he based his decision on feedback from Project Managers who worked with Plaintiff. (Showers Dep., p. 18 of 34.) Showers testified that Project Managers Dave Skotek and Dave Allison had voiced concerns that Plaintiff was producing inaccurate work and was taking too much time to complete certain tasks. (*Id*. at 18-19 of 34.)

## B.    Procedural History

On December 29, 2015, Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed with the Pennsylvania Human Relations Commission ("PHRC"). (Doc. 1-2.) On or around July 5, 2016, the EEOC notified Plaintiff of her right to sue. (*See* Doc. 1 at ¶ 17.)

Plaintiff filed the instant complaint on October 3, 2016. (Doc. 1.) On October 28, 2016, Defendant filed an answer to the complaint, wherein it generally denied Plaintiff's allegations of discrimination and indicated that it lacked sufficient information to admit or deny nearly all other allegations contained therein. (S*ee generally* Doc. 5.)

After the parties engaged in discovery, Defendants filed a motion for summary judgment, a brief in support thereof, and a statement of facts on October 2, 2017. (Docs. 21-24.) In its brief, Defendant argues that they should be awarded

judgment on Plaintiff's age and disability discrimination claims because Plaintiff failed to establish prima facie cases of discrimination, hostile work environment, and retaliation, and Defendant had legitimate, non-pretextual reasons for terminating her employment. (Doc. 22, pp. 6-14 of 25.) Defendant further argues that Plaintiff's claims fail because Plaintiff failed to identify record evidence demonstrating conduct directed to her because of her gender, age, or disability or a pattern or practice of gender, age, or disability discrimination by Defendant. (*Id*. at 14-17 of 25.) Finally, Defendant argues that Plaintiff has failed to establish a prima facie case of retaliation based on her requests for accommodations or complaints about Farmer's inappropriate conduct towards her. (*Id*. at 17-18 of 25.)

On November 6, 2017, Plaintiff filed an opposition brief, a counter statement of facts, and an answer to Defendant's statement of facts. (Docs. 27, 28.) In her opposition brief, Plaintiff concedes her age discrimination claim under the ADEA. (Doc. 27, p. 1 of 9.) In addition to refuting Defendant's arguments, Plaintiff argues that this court should preclude Showers' testimony to the extent he relies on statements made by project managers Skotek and Allison because neither Skotek nor Allison were included on Defendant's Rule 26 statement. (Doc. 27, pp. 8-9 of 9; Doc. 27-15.) Defendant filed a reply brief on November 20, 2017. (Doc 30.) In its reply brief, Defendant argues that by conceding her age discrimination claim under the ADEA, she also necessarily must concede her age discrimination

claim under the PHRA.  Defendant further argues that Plaintiff failed to pursue her

retaliation claims under Title VII, the ADA, and the PHRA, as well as her hostile

work environment claims under the ADA and PHRA, and, thus, the court should

construe Plaintiff's brief in opposition to concede those claims as well.  Defendant

also argues that Plaintiff's claims are generally based on her own subjective

feelings and conjecture, which cannot be a proper basis to support her claims of

discrimination and retaliation.  Finally, Defendant argues that this court should

consider Showers' testimony on the statements made by Skotek and Allison

because Plaintiff is not prejudiced by the inclusion of Showers' reference to their

statements, their statements are not being offered for the truth of the matter

asserted, and because the issues raised by Plaintiff are more properly raised in a

motion *in limine* rather than in a brief in opposition.  The motion has been fully

briefed and is now ripe for disposition.


## II.  <u>Legal Standard</u>

Summary judgment is appropriate when no genuine issue exists as to any

material fact and the moving party is entitled to judgment as a matter of law.  *See*

Fed. R. Civ. P. 56(a).  A fact is "material" if "proof of its existence or nonexistence

would affect the outcome of the lawsuit under the law applicable to the case."

*Burke v. TransAm Trucking*, *Inc.*, 605 F. Supp. 2d 647, 650 (M.D. Pa. 2009).  An

issue of material fact is genuine if "the evidence is such that a reasonable jury might return a verdict for the non-moving party." *Id.* "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original).

When considering a motion for summary judgment, a court must look beyond the pleadings and into the factual record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The nonmoving party may not merely restate allegations made in the pleadings or rely upon factually unsupported legal conclusions. *See id.* at 323–24. Instead, the nonmoving party must support each essential element of its claim with specific evidence from the record. *Id.* at 317. All factual doubts and reasonable inferences are to be resolved in favor of the nonmoving party. *Id.*

The moving party bears the initial burden of proving that no genuine issue of material fact exists. *See id.* at 323. Once this burden is met, the burden shifts to the nonmoving party to produce evidence proving the existence of every essential element to its case. *Id.* The nonmoving party must then "go beyond the pleadings by way of affidavits, depositions . . . or the like in order to demonstrate specific material facts which give rise to a genuine issue." *Id.* at 324. In considering a motion for summary judgment, the court is not to engage in credibility

determinations or the weighing of evidence. *Burke*, 605 F. Supp. 2d at 650.

"Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc*., 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993).

Defendant has moved for summary judgment, arguing that there are no genuine issues of material fact pertaining to any of Plaintiff's claims and that Defendant is entitled to judgment as a matter of law.

## III. <u>Discussion</u>

Plaintiff has asserted claims for discrimination, hostile work environment, and retaliation pursuant to Title VII, the ADA, and similar state law claims under the PHRA, as well as a claim for punitive damages. Because the standards governing Plaintiff's ADA and Title VII claims are substantially similar to the standards governing Plaintiff's claims under the PHRA, the court will analyze them collectively. *See Meyer v. Callery Conway Mars HV, Inc*., No. 13-cv-109, 2015 WL 65135, *5 (W.D. Pa. Jan. 5, 2015) ("The Pennsylvania courts ordinarily construe the provisions of the PHRA to be coterminous with their federal counterparts."); *see also Kelly v. Drexel Univ*., 94 F.3d 102, 105 (3d Cir. 1996) (treating PHRA and ADA claims coextensively); *Burton v. Heckmann Water Res*.,

No. 13-cv-0880, 2015 WL 1427971, *8 n.3 (M.D. Pa. Mar. 27, 2015) (analyzing PHRA and Title VII claims collectively) (citation omitted)).

As noted in Plaintiff's brief in opposition to Defendant's motion for summary judgment, Plaintiff is no longer pursuing her claims under the ADEA. (*See* Doc. 27, p. 1.) Furthermore, because Plaintiff fails to address any arguments related to her age-related PHRA claims, the Court presumes that she no longer intends to pursue any age-related claims under either the ADEA or the PHRA. Defendant argues that Plaintiff has additionally waived her claims for her hostile work environment claims under Title VII for failure to raise arguments regarding that claim in her brief in opposition to summary judgment. Because Plaintiff did not expressly decline to proceed on that claim and sufficient evidence exists for the court to dispose of the claim on the merits, the court will address all of Plaintiff's Title VII and ADA claims herein.

## A.    Burden-Shifting Framework

Title VII, ADA, and PHRA claims are analyzed according to the burden-shifting framework set forth by our Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Wilson v. Mobilex USA Inc.*, 406 F. App'x 625, 626 (3d Cir. 2011). "Under *McDonnell Douglas*, a plaintiff must shoulder the initial burden of making out a prima facie case of discrimination. If the plaintiff does so, the burden shifts to the defendant to articulate a legitimate, non-

discriminatory reason for the employment action. Once the defendant does so, the presumption of discriminatory action is rebutted and the plaintiff must prove that the defendant's stated reasons are a pretext for unlawful discrimination." *Id.* at 626-27, *citing McDonnell Douglas*, 411 U.S. at 802–04. A plaintiff may demonstrate pretext by submitting evidence that would allow a factfinder to disbelieve the employer's justification or to conclude that an invidious discriminatory reason was more likely than not a "but for" cause of the employment action. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). To accomplish this, a plaintiff must show that a defendant's reasons are so weak, incoherent, implausible, or inconsistent that they lack credibility. *Id*. at 765. A plaintiff's rebuttal evidence must allow a reasonable factfinder to conclude, by a preponderance of the evidence, that unlawful discrimination was the "but for" cause of the adverse employment action. *Abels v. DISH Network Serv. LLC*, 507 F. App'x 179, 183 (3d Cir. 2012) (citing *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 177-78 (2009)).

## B.    Plaintiff's ADA Claims

Plaintiff's Complaint raises claims under the ADA for disability discrimination, harassment, and retaliation. Although distinct elements exist for a prima facie showing of each of these three causes of action, Defendant's motion for summary judgment focuses on the same element of each claim: whether there

is a causal link between Plaintiff's disability and the actions taken by Defendant. Accordingly, in disposing of this motion, the court will direct its analysis towards that common element and will assume without deciding that Plaintiff has met her burden to demonstrate the remaining elements of her claims under the ADA.

In order to establish a prima facie case of discrimination based on disability under the ADA, a plaintiff must demonstrate that she (1) had a disability as defined by the ADA; (2) was a "qualified individual;"[1] and (3) suffered an adverse employment action because of her disability. *Turner v. Hershey Chocolate U.S.A.*, 440 F.3d 604, 611 (3d Cir. 2006). To establish a prima facie case of retaliation under the ADA, a plaintiff must show that: (1) she engaged in a protected employee activity; (2) she suffered an adverse employment action either after or contemporaneous with the protected activity; and (3) that the protected activity and adverse action are causally connected. *See Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004). To establish a hostile work environment claim under the ADA, a plaintiff must show that: (1) she is a "qualified individual" with a disability; (2) she was subjected to unwelcome harassment because of her disability or request for an accommodation; (3) the harassment was sufficiently severe or pervasive to alter the conditions of her employment; and (4) her employer knew or should have known of the harassment

---

[1] A "qualified individual" is defined as a person who can "perform the essential functions" of the job "with or without reasonable accommodation." 42 U.S.C. § 12111(8).

and failed to take prompt effective remedial action. *McGlone v. Philadelphia Gas Works*, 17-cv-1399, 2018 WL 2193658, *4 (3d Cir. May 14, 2018) (citing *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999)).

To survive summary judgment, a plaintiff "must provide evidence that supports a logical inference of causation between the alleged disability and the adverse employment action and/or harassment." *Rubano v. Farrell Area Sch. Dist.*, 991 F. Supp. 2d 678, 700 (W.D. Pa. 2014) (internal quotations omitted). It is uncontested that Plaintiff had a disability cognizable under the ADA and that her inclusion in the RIF constitutes an adverse employment action. Defendants argue, however, that Plaintiff has presented no evidence of a causal link between her disability and her inclusion in the RIF and that her employment was terminated due to her poor attitude and job performance rather than her disability.

Plaintiff does not argue that she was denied any requested accommodation or that any employee made negative remarks about her disability. Instead, she suggests that her direct supervisor and the human resource manager made her feel bad about requesting accommodations and generally had a negative attitude towards her because of her requests for accommodations. Plaintiff argues that she "is of course not required to produce direct evidence of discrimination or retaliation, and may prove her claims through circumstantial evidence." (Doc. 27, p. 3 of 9, (citing *Jackson v. Univ. of Pittsburgh*, 826 F.2d 230, 235 (3d Cir. 1987),

*cert. denied*, 484 U.S. 1020 (1988) ("Discrimination victims often come to the legal process without witnesses and with little direct evidence indicating the precise nature of the wrongs they have suffered. That is one of the reasons why our legal system permits discrimination plaintiffs to [] prove [their] case[s] by direct or circumstantial evidence.")).) Essentially, Plaintiff urges this court to find discrimination based on nothing more than her testimony as to her own subjective feelings in the work place. Although circumstantial evidence is permissible to prove a prima facie case of discrimination, Plaintiff's own state of mind, without more, is insufficient evidence to survive Defendant's motion for summary judgment.

Plaintiff did not testify as to any negative conduct related to her disability from the time she returned from her injury until Showers became her supervisor in 2014. Although Plaintiff testified that Showers "had no respect for [her] abilities" based on her observations of his "comments and his actions," (*id.* at 58, 65 of 230,) she does not refer to any specific statements made by Showers or note any comment related to her disability. In fact, it does not appear that Showers even acknowledged her disability other than to refer her requests for accommodation to human resources. Plaintiff was never told that the option to work from home would be rescinded, nor did Showers approach her to request that she provide additional documentation for her accommodation after he became her supervisor in

2014. Instead, Plaintiff affirmatively sought out Showers to confirm that her request would be continued. (*Id*. at 109-111 of 230.) When Plaintiff met with human resources, she was told that she needed to provide a note, which her prior supervisor, Andy Balthaser, also required when she originally requested the accommodation in 2013. (*Id*. at 114-115 of 230.) Plaintiff testified that she viewed the request for a physician's note as a derogatory comment about her disability because Showers and Stevens "made [her] feel bad about it," but Balthaser did not. (*Id*.) Similarly, Plaintiff testified that, at the time she made the request, she was studying for a "Six Sigma" statistical analysis certification exam. (*Id*. at 116-117 of 230.) Stevens and Showers requested that she not study for the test instead of performing job duties while working from home. (*Id*.) Although Plaintiff did not view this as a direct comment on her disability, she testified that she perceived the comment to be derogatory towards her "work ethic." (*Id*. at 117 of 230.)

Regarding her request for the standing desk, Plaintiff originally requested the desk from her office's facilities manager. (*Id*. at 122 of 230.) The facilities manager informed her that she could have the desk without prior approval from her supervisor, yet Plaintiff approached Showers anyway, requesting that he approve the standing desk. (*Id*. at 123 of 230.) Showers made no comments regarding the request, but again referred the request to human resources. (*Id*.) Stevens again

told Plaintiff that she would need a doctor's note to receive the accommodation. (*Id*. at 124-125 of 230.) Plaintiff testified that she viewed Showers' lack of a response as derogatory and that she believed other employees who were not under Showers' supervision had received similar desks without providing doctor's notes. (*Id*. at 126-127 of 230.) Andrew Balthaser, Plaintiff's former supervisor, testified that he was Showers' supervisor at the time Plaintiff made her requests and that Showers had approached him regarding both of Plaintiff's requests for accommodations. (Balthaser Dep., pp. 13-14 of 21.) Bathaser believed that Showers either "did not object to" or "agreed with" Plaintiff's requests, and Balthaser actually instructed Showers to refer both requests to Stevens pursuant to Defendant's standard policy and practice. (*Id*.) Plaintiff further testified that she viewed Stevens' attitude towards her to be discriminatory because Stevens no longer waved or said "good night" to Plaintiff after the request for the standing desk. (McGarvey Dep., p. 133 of 230.) Plaintiff testified that, other than Showers and Stevens, she did not perceive that any other employees of Defendant discriminated against her due to her disability. (*Id*. at 143 of 230.)

"The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific." *Kachmar v. SunGard Data Systems, Inc*., 109 F.3d 173, 178 (3d Cir. 1997). Close "temporal proximity," between the protected status or action by the employee and the adverse action by

the employer, is suggestive but not determinative of causation. *Emmell v. Phoenixville Hosp. Co., LLC*, 303 F. Supp. 3d 314, 332 (E.D. Pa. 2018) (citing *Farrell v. Planters Lifesavers Co*., 206 F.3d 271, 280 (3d Cir. 2000)). Here, Plaintiff became disabled in 2010, five years before the termination of her employment, and her requests for accommodations came approximately six months before her inclusion in the RIF. Such an attenuated time between the protected activity and the adverse employment action does not give rise to an inference of a causal connection. *See Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2007) (holding five-month time period between complaint and adverse action was insufficient to support inference of causation). A causation determination, however, "is not limited to timing and demonstrative proof, such as actual antagonistic conduct or animus, but can depend on inferences based on the record as a whole." *Emmell v. Phoenixville Hosp. Co., LLC,* 303 F. Supp. 3d at 332. (internal quotations omitted).

Aside from arguing that she was terminated soon after her requests for accommodation, Plaintiff's only allegation that she was discriminated against because of her disability is that Showers and Stevens made her feel bad about her requests and that they were rude to her after the requests. The fact that Plaintiff's supervisors may have been consistently rude, or otherwise avoided her, does not alone evidence a hostile work environment. *Fusco v. Bucks Cty. of Pennsylvania*,

No. 08-cv-2082, 2009 WL 4911938, *10 (E.D. Pa. Dec. 18, 2009). Thus, Plaintiff's mere perception that her supervisors were rude is insufficient evidence of a causal link between her disability and her inclusion in the RIF. Having concluded that the temporal connection between Plaintiff's accommodation requests does not create an inference of causation and that Plaintiff's perception that Showers and Stevens were rude to her is not sufficient evidence to overcome Defendant's motion for summary judgment, this court finds that Plaintiff has failed to meet her burden of demonstrating a prima facie case for discrimination, retaliation, or hostile work environment claims under the ADA.

## C.    Plaintiff's Title VII Claims

Plaintiff's Complaint raises claims under Title VII for sex-based discrimination, harassment, and retaliation. Under Title VII, it is unlawful "for any employer to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). Like its arguments related to Plaintiff's ADA claims, Defendant's motion for summary judgment focuses on the causation element of each of Plaintiff's claims under Title VII. For the reasons set forth more fully below, the Court will address each of Plaintiff's claims under Title VII separately.

*i.* *Sex-based discrimination*

To state a prima facie case for sex discrimination, Plaintiff must show that (1) she was a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) that the action occurred under conditions that give rise to an inference of intentional discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). As with her claims for disability discrimination, it is uncontested that Plaintiff is a member of a protected class and that she suffered an adverse employment action. Defendants similarly argue that Plaintiff has presented no evidence of a causal link between her sex and her inclusion in the RIF and that her employment was terminated due to her poor attitude and job performance rather than her disability.

Plaintiff generally alleges that Showers had a negative attitude towards her because she is a woman. She testified as follows:

> Q: How did Jim Showers discriminate against you?
>
> A: I feel he didn't respect women in positions of . . . females that were professionals.

(McGarvey Dep., p. 63 of 230.)

> Q: So when you say Jim didn't respect professional women, you're basing that on his interaction with you?
>
> A: Yes.
>
> Q: Statements that you heard from [a female manager] Sue Sholtis?
>
> A: Yes

(*Id*. at 73 of 230.) Plaintiff also noted that two other women, Dayon Saydee, and "Ramona," had mentioned to her that they felt disrespected by Showers. (*Id*. at 72-73, 76-77 of 230.) Plaintiff also testified that Showers spoke in an aggressive and demeaning tone to a third, unidentified woman who had a desk near Plaintiff. (*Id*. at 83-86 ("Q: What was disrespectful? His words? His tone? A: Body language, tone, aggressive.").) Plaintiff additionally detailed an incident where she was on a conference call with Showers, a new client, and other coworkers. She testified that she spoke up during the call to explain an issue to Showers and her coworkers, but was told that she shouldn't be talking during the call and was reprimanded after the call ended. (*Id*. at 78-80.) In sum, Plaintiff's assertions of sex-based discrimination amount to no more than her own subjective and uncorroborated perceptions that Showers was rude and aggressive towards her. *See Stewart v. Progressive Bus. Publ'ns, Inc*., No. 17-cv-4122, 2018 WL 3141458, *6 (E.D. Pa. June 26, 2018) (granting defendant's summary judgment motion in Title VII pregnancy discrimination case where plaintiff's only evidence was her belief that employer looked at her differently after her pregnancy and supervisor was "disappointed" that she was pregnant) (citing *Brock v. Int'l Union of Operating Eng'rs, Local 542*, 140 F.Supp. 3d 432, 438 (E.D. Pa. 2015) (additional citations omitted)).

In contrast to Plaintiff's perceptions that women were treated less favorably, Sultzaberger testified that there was no reason to believe that women were treated any differently by Defendant:

> Q: Has any female employee of [Defendant] ever told you they feel that women are treated worse than men?
>
> A: No.
>
> Q: Did you ever work with someone named Dayon Saydee?
>
> A: Yes.
>
> . . . .
>
> Q: Did [Saydee] ever voice any complaints to you that she felt females were being treat[ed] disrespectfully at the company?
>
> A: No.
>
> Q: Did Ms. McGarvey ever tell you she thought that?
>
> A: She thought that, yes . . . she felt that she didn't get the appropriate title and the pay because she was a female.
>
> Q: . . . Did any other female employee, other than Ms. McGarvey, ever express concerns to you about not being treated fairly?
>
> A: No.

(Sultzaberger Dep., pp. 22-24 of 34.)   It may be true that Showers had an aggressive management style or was rude to Plaintiff in particular.   Plaintiff, however, has failed to introduce any evidence, aside from her own subjective feelings, connecting Showers' negative attitude to her sex.   Thus, she has failed to produce sufficient evidence to satisfy the causality element of her claim for sex-based discrimination.

*ii.*    *Hostile work environment.*

To establish a Title VII hostile work environment claim against one's employer, a plaintiff employee must prove:

> 1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability.

*Minarsky v. Susquehanna Cty.*, 17-cv-2646, 2018 WL 3234243, *4 (3d Cir. July 3, 2018) (citing *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)).    Defendant challenges the first element of Plaintiff's hostile work environment claim, arguing that Plaintiff has failed to produce any evidence that Defendant discriminated against Plaintiff due to her sex.    The court will dismiss Plaintiff's claims for hostile work environment under Title VII for reasons similar to those set forth above related to Plaintiff's claims for sex-based discrimination.

Plaintiff's claim for hostile work environment, like her claim for sex-based discrimination, hinges on her perceptions that Showers was aggressive, rude, and demeaning towards her because of her sex.    As set forth above, Plaintiff has failed to present any evidence that Showers' allegedly negative and aggressive attitude was related to her sex.    Even if there was some evidence to demonstrate a connection between Showers' attitude and Plaintiff's sex, the mere fact that he was generally rude is insufficient to support a hostile work environment claim under

Title VII. In order to survive a motion for summary judgment, a plaintiff alleging a hostile work environment claim must show that the alleged acts occurred with sufficient regularity and were sufficiently serious to "permeate the workplace and change the very nature of the plaintiff's employment." *Tourtelle v. Eli Lilly and Co.*, No. 09-cv-0774, 2013 WL 1628606, *5 (E.D. Pa. 2013) (finding fewer than a dozen interactions over the course of 18 months to be sporadic, isolated incidents); *Obergantschnig v. Saw Creek Estates Cmty. Ass'n, Inc.*, No. 12-cv-5911, 2013 WL 5676328, *7 (E.D. Pa. Oct. 18, 2013), *aff'd*, 573 F. App'x 213 (3d Cir. 2014) (finding that "when viewed in their totality," "repugnant and unacceptable" sexual comments and rumors were not sufficiently serious or pervasive to survive the defendant's motion for summary judgment). Therefore, the court finds that Plaintiff has failed to present sufficient evidence to prove that she suffered any discrimination due to her sex, and, even if Plaintiff were to demonstrate such a connection, the severity and pervasiveness of the alleged acts fail to support a hostile work environment claim under Title VII.

### iii.  *Retaliation*

Plaintiff's claim of retaliation under Title VII is somewhat distinct from her claims of discrimination and hostile work environment based on her sex. To assert a prima facie retaliation claim under Title VII, a plaintiff must show that "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse

employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Hussein v. UPMC Mercy Hosp.*, 466 F. App'x 108, 112 (3d Cir. 2012) (internal quotation omitted). Regarding the third element, the Supreme Court has held that Title VII retaliation claims require that a plaintiff prove that the desire to retaliate against the exercise of a protected activity was the "but-for" cause of the challenged employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2529 (2013). Thus, a plaintiff who alleges unlawful retaliation under Title VII must meet a higher causation standard than for discrimination claims based on the employee's status in a protected class. *Id*. at 2525. In support of her claim for retaliation under Title VII, Plaintiff alleges that she was terminated because she had made a formal complaint of sexual harassment by a coworker.

In March 2014, Plaintiff and Tabatha Sultzaberger began training Chris Farmer, a new hire in Plaintiff's department. (McGarvey Dep., pp. 89-90 of 230; Farmer Dep., pp. 9 of 16; Sultzaberger Dep., pp. 14 of 34.) Plaintiff and Sultzaberger both testified that Famer rubbed his genitals in front of them during separate one-on-one training sessions. (McGarvey Dep., pp. 92-93 of 230; Sultzaberger Dep., pp. 16-18 of 34.) Although Showers testified that only Sultzaberger lodged a formal complaint, for purposes of this motion for summary judgment, the court will assume that Plaintiff and Sultzaberger both raised formal

complaints against Farmer. (Showers Dep., p. 23 of 34.) Both Plaintiff and Sultzaberger testified that the incidents stopped after their complaint; however, Plaintiff testified that Farmer ignored her completely after the complaint. (McGarvey Dep., pp. 96-97 of 230.)

In examining the causation element of a retaliation claim under Title VII, courts tend to focus on two factors: (1) temporal proximity between the protected activity and the adverse employment action; and (2) the existence of a pattern of antagonism in the intervening period. *Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006), *abrogated in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). These two factors, however, are not limitations on the court's inquiry. The court may examine the record "as a whole" to determine if sufficient evidence exists to satisfy the causation element of a plaintiff's retaliation claim. *Kachmar*, 109 F.3d at 177. Although not dispositive, the timing of Plaintiff's inclusion in the RIF is not "unusually suggestive" of a retaliatory motive as to give rise to an inference of causation. *See Glass v. First Judicial Dist. of Pa.*, No. 17-cv-2928, 2018 WL 2149297, *4 (3d Cir. May 10, 2018) (finding that intervening period of three months between formal complaint and termination was not unusually suggestive). Although the precise date of Plaintiff's complaint regarding Farmer is not apparent from the record, viewing the evidence in the light most favorable to Plaintiff, it appears that the complaint was made sometime in

late 2014. (Sultzaberger Dep., p. 16 of 34; Doc. 1-2, pp. 5-6 of 19.) Plaintiff was not included in the RIF until July 2015, over six months later. (Doc. 1, ¶ 28.) The Third Circuit has often held that an intervening period of several months is not unusually suggestive in the context of a retaliation claim. *See Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 198 (3d Cir. 2015) (holding that three to ten month time period between a complaint and adverse action was not unusually suggestive) (internal citation omitted); *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 234 (3d Cir. 2007) (holding that a three month time period between a complaint and termination was not unusually suggestive)); *cf. Doe v. C.A.R.S. Prot. Plus, Inc*., 527 F.3d 358, 369 (3d Cir. 2008) (gap of three working days); *Jalil v. Avdel Corp*., 873 F.2d 701, 708 (3d Cir. 1989) (two-day gap). Thus, without more, the time period between Plaintiff's complaint and her inclusion in the RIF is insufficient to establish a retaliatory motive.

Moreover, there is no evidence of any antagonism during the intervening period between Plaintiff's complaint and her inclusion in the RIF. Although Plaintiff testified that Showers had a negative attitude towards her, she fails to associate this attitude with her complaints against Farmer. *See Thomas-Taylor v. City of Pittsburgh*, No. 13-cv-164, 2014 WL 4079944, *9 (W.D. Pa. Aug. 18, 2014), *aff'd*, 605 F. App'x 95 (3d Cir. 2015) (finding that a "lack of communication" during intervening period does not demonstrate a pattern of

antagonism); *cf. Marra v. Philadelphia Housing Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) (finding pattern of antagonism where plaintiff was demoted, lost a stipend, was excluded from meetings, had employees under his supervision reassigned, and was "looked at with disgust" in public meeting). Furthermore, it is uncontested that Sultzaberger also made a similar complaint against Farmer. Sultzaberger experienced no adverse treatment that would suggest a policy or practice of retaliation against employees who lodge complaints for sexual harassment. Plaintiff points to no other evidence that is suggestive of a pattern of antagonism or a retaliatory motive. When viewed as a whole the record does not suggest a causal connection between Plaintiff's complaint against Farmer and, thus, Plaintiff's retaliation claim must fail.

## D. Defendant's Legitimate, Non-Discriminatory Reasons for Plaintiff's Inclusion in the RIF

Even if Plaintiff did demonstrate a prima facie case for any of her claims under the ADA or Title VII, Defendant has demonstrated a legitimate, non-discriminatory reason for including Plaintiff in its RIF, and Plaintiff has introduced no evidence that Defendant's proffered reason was pretextual. *McDonnell Douglas*, 411 U.S. at 802–04. The impetus for Defendant's termination of Plaintiff's employment was a department-wide RIF. Although Plaintiff points out that her supervisor, Showers, testified that he could have made a recommendation

that no members of his department be included in the RIF, Plaintiff does not contest that Defendant requested that Showers make a recommendation as part of the RIF. (Showers Dep., pp. 16-17 of 34.) Beginning in October 2013, Plaintiff received increasingly negative performance reviews. (McGarvey Dep., pp. 139-142 of 230.) Plaintiff does not contest that she received negative reviews; she merely disagrees with their content. Both Balthaser and Showers agreed that Plaintiff was the right person to include in the RIF due to her declining performance. (Balthaser Dep., pp. 15-16 of 21; Showers Dep., p. 11-12 of 34.)

Plaintiff fails to point to any evidence that the reasons given by Defendant were pretextual aside from her allegations that she was "blindsided" by the negative reviews. (McGarvey Dep., pp. 139-140 of 230.) Disagreement with a defendant's proffered reason is insufficient to demonstrate pretext. *Boyle v. Univ of Pa.*, 689 Fed. Appx. 140 (3d Cir. 2017). Rather, Plaintiff must demonstrate that the proffered reasons for taking the employment action are "weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find it unworthy of credence." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 800 (3d Cir. 2003) (internal quotation omitted). Plaintiff's only factual challenge to Defendant's proffered reason is the deposition testimony of her former supervisor Fred Sauers. Although Mr. Sauers testified that her performance was good, he had not acted as Plaintiff's supervisor since 2012 and stated that he had nothing to do

with the decision to terminate her.  (Sauers Dep., pp. 11-12 of 14.)  Because Mr.

Sauers' testimony relates only to the time period between 2007 and 2012, it has no

bearing on Plaintiff's performance during the time relevant to this action and, thus,

is insufficient to rebut Defendant's legitimate non-discriminatory reasons for

terminating Plaintiff's employment.  Accordingly, even assuming *arguendo* that

Plaintiff has established a prima facie case for any of her claims under the ADA or

Title VII, she has failed to rebut Defendant's legitimate, non-discriminatory

reasons for terminating her employment.

## E.    Failure to Disclose

Plaintiff argues that Defendant should be precluded from relying on

Showers' deposition testimony to the extent that he referred to statements made by

project managers Skotek and Allison because neither was included on Defendants'

Rule 26 Disclosure Statement.[2]  (*See* Doc. 27-15.)  Federal Rule of Civil Procedure

37(c)(1) provides that:

> If a party fails to provide information or identify a
> witness as required by Rule 26(a) or (e), the party is not
> allowed to use that information or witness to supply
> evidence on a motion, at a hearing, or at a trial, unless the
> failure was substantially justified or is harmless.  In

---

[2] Defendant argues that the appropriate method to request the exclusion of evidence under Rule 37 is via a motion *in limine*; however, this argument is belied by the Official Note to Rule 37(c), which provides:  "The revision provides a self-executing sanction . . . without the need for a motion under subdivision (a)(2)(A)."  *See also Lannes v. Flowserve U.S., Inc.*, 628 F. App'x 957, 960 (9th Cir. 2015) ("No formal motion is necessary for a court to disallow the use of undisclosed [] testimony.").  Thus, we shall dispose of Plaintiff's request to exclude portions of Flowers' deposition testimony on the merits.

addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B) may inform the jury of the party's failure; and

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37. Federal Rule of Civil Procedure 26(A) provides, in pertinent part:

Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:

(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

Fed. R. Civ. P. 37.

Although it is clear that Defendant failed to include Skotek and Allison in its Rule 26 disclosure statement, such a failure is not dispositive in this court's determination of whether to exclude Showers' deposition testimony or to impose sanctions on Defendant. Under Federal Rule of Civil Procedure 37(c)(1), a party may not be subject to sanctions or barred from using evidence if the omission under Rule 26 was substantially justified or is harmless. This court finds that

Defendant's omission of Skotek and Allison from its Rule 26 disclosure statement was harmless.

The statements made by Skotek and Allison are of little import in the disposition of this matter. Defendant did not submit affidavits or deposition testimony from either Skotek or Allison and does not submit their statements for the truth of their assertions. Instead, Showers' testimony merely demonstrates his own mental state regarding the quality of Plaintiff's work product. *See* Fed. R. Evid. 803(3). It is clear from the balance of Showers' testimony that he viewed Plaintiff's performance as poor in the months preceding the RIF. Thus, the mention of Skotek and Allison adds little to the evidence already presented by Defendant. Furthermore, Plaintiff cannot reasonably state that she was surprised by the reference to Skotek and Allison or the nature of their alleged statements. Plaintiff herself refers to them in her EEOC Charge of Discrimination. (*See* Doc. 1-2, pp. 8, 12-13 of 19.) In her EEOC Charge, Plaintiff seems to state that both Skotek and Allison had negative impressions of her work product in 2014-2015. (*See e.g.*, *Id.* at 13 ("I could hear my boss along with other managers (Dave Skoteck) [sic] whispering how I was NOT efficient and [Showers] needed to tell me.")) Plaintiff was free to depose or seek affidavits from either, yet chose not to do so. Accordingly, Plaintiff's request to exclude Showers' testimony to the extent it refers to statements made by Skotek and Allison is denied.

## IV. Conclusion

For the reasons set forth above, the court finds that Plaintiff has failed to proffer sufficient evidence to demonstrate a prima facie claim for a hostile work environment or discrimination based on her sex or her classification as disabled under the ADA, or retaliation for her complaints of sexual harassment or requests for accommodations. The court further concludes that Plaintiff has failed to demonstrate sufficient harm to justify sanctions under Federal Rule of Civil Procedure 37(c)(1) for failure to disclose certain information pursuant to Federal Rule of Civil Procedure 26(A). Therefore, the court will grant Defendant's motion for summary judgment in its entirety.

An appropriate order will issue.

 s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: July 26, 2018